Chief Justice Bibb
delivered the Opinion of the Court.
The appellants exhibited their bill to have a credit on a judgment at law, .obtained by Banta, as the assignnee of Eccles, upon a note for $968 37, for the amount of a judgment which Moore had recovered against Eccles, and had assigned to the complainants.
Allegationsol' the bill of the '^1!in),i; an<i oarv.01 W
The facts alleged by tbe bill are — that Moore bad a judgment against, Eccles for $589 70, with interesj. prom 23d May, 1819, till paid, and $6 53, c«sts, which was assigned by him to the Sharps on the 15th September, 1819. — Eccles and Sharps were in treaty for a stock of goods; they had come to an understanding; but before the execution of the agreement, an execution on a judgment against Eccles was levied on the goods, so that he was unable to complete his contract with Sharps; in this situation, Eccles, by the assistance of Sharps, Brewer and others, succeeded in making arrangements to prevent the sacrifice of his goods under the sale by execution; a.nd ihat it was distinctly understood and agreed between Eccles and Sharps, and Brewer, &c. that for the money due Brewer, part of which he had borrowed on the press of the occasion to relieve Eccles’ goods, Brewer was to be secured out of the proceeds of the sale to Sharps, and the Sharps were to have credit on their purchase for the judgment of Moore; that this latter was an inducement to Sharps to go on with their purchase after the levy of the execution; which incumbrance would have defeated the previous arrangement between Eccles and Sharps, but for their assistance, and Brewer’s and others, in removing that incumbrance.
On the 24th September, 1819, which was the appointed day of sale, die execution was removed, and Eccles and Sharps proceeded to carry into effect their contract for the goods. The debt to Brewer was arranged by Eccles out of the proceeds; huí; Eccles refused to credit the Sharps with the amount of Moore’s judgment, and on tbe same evening after Sharps executed their note, assigned it to Banta.
The statute which authorizes the assignment of bonds and other writings, allows all discounts, either against plaintiff, or against original payee before notice of assignment; and moreover provides, “that nothing in this act shall be so construed as to change the nature of the defence, either in law or equity, that any defendant may have against the assignee or assignees, or the original assignor or assignors.”
The equity which the complainants set up was pre-existing the actual execution of the note. As *71 soon as the note was executed by Sharp’s to Eccles for $968 37, they had in equity a right to claim a discount and credit for the amount of Moore’s judgment of $589 70, with interest and costs, by virtue of the previous assignment to them of that judgment. The act of Eccles, in assigning the note to Banta without such credit, connot defeat the equity of the Sharps. Banta took the note subject to that equity.
Banta’s answer andj proofs.
The embarrassment which has been thrown into the case, arises out of a charge in the bill, that Banta had notice of this equity before he took the assignment — and the parties have run off into proofs to substantiate or repel this charge.
Banta in his answer, denies notice, but docs not insist upon any matter whatever to rebut the equity of Sharps and compel them to pay him the full amount; he does not pretend by his answer that there was any promise or act on the part of the Sharps to induce him to take the assignment. On the contrary, it appears by his own answer, and the deposition of Thompson, that Eccles was indebted to Banta, in two sums, one wherein said Henry Eccles and Samuel Eccles were bound to him, in a note for seven hundred and fifty dollars, of long standing, with a credit of $267 88, leaving a ballance of $497 12; the other a note of H. Eccles alone, for $1150, with a lien therefor on a house and lot, given by Eccles to Banta about the time of executing this last note, viz: in August, 1818. Neither of these securities were surrendered by Banta, but he received the assignment of Sharps note with a distinct understanding, as Thompson states, that “Eccles is only to be credited so far as actual collections are made from the Sharps.” It appears that Mr. Thompson, Banta’s lawyer, who then had Eccles’ notes to Banta and the lien, was present when the assignment was made of Sharps note, and received that also from Banta, and yet retains those notes.
Banta’s lien on the house and lot, although it might not have been good against others not having notice, yet it was good between Eccles and himself; and it appears that on the 21st of July, 1821, by vir *72 tue of, and in consequence of the pursuit and management of that lien, Banta did receive five hundred - • dollars, to he credited on the note of $1150, out of the proceeds of that house and lot.
An obligor executing a promisory note, with a previous understanding that it is to be credited by a judgment he had purchased on obligee, will be entitled to the credit on the notes in the hands of an assignee without notice.
Woodson and Monroe, for appellants; Daviess and Depew, for appellees.
It does appear that on the same day that the note of Sharp was executed to Eccles, Banta had notice of the assignment of Moore’s judgment to Sharps, and was warned not to take an assignment of Sharps note, to which he made no reply; and on the same day, also, Eccles was served with a written notice by Sharps, not to assign away their note unless subject lo a credit for Moore’s judgment.
Whether Banta had or had not received this notice before he took the assignment is not worth pursuing. If he had received the notice before the assignment, as is probable, yet Banta might well take the transfer upon the terms he did, yielding nothing, only to hold it as additional security, and credit whatever should he actually received, leaving Eccles and Sharps to dispute about the credit for Moore’s judgment; for Banta could well see, that over and above Moore’s judgment, if credited, he would collect a considerable sum not contested.
The assignment of Moore’s judgment to Sharps, preceded the execution of the note to Eccles and assignment thereof to Banta; of this Eccles had notice.
It is therefore decreed and ordered, that the decree of the circuit court be reversed, and the cause remanded with directions to perpetuate the injunction against the judgment at law for the amount of the judgment of Moore, and the costs of the suit in chancery in that court.
Appellants to recover their costs in this court.